# No. 26-70003

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

Michael Dean Gonzales,

*Plaintiff – Appellant*

v.

Michael Gerke, Chief, Odessa Police Department; Director Freeman F. Martin; Travis Golden Bragg,

*Defendants – Appellees*

On Appeal from the United States District Court
for the Western District of Texas
7:22-CV-46 (Capital Case)

## REPLY BRIEF


Richard Burr
Burr and Welch, PC
PO Box 525
Leggett, TX 77350
713-628-3391
dick@burrandwelch.com

Maureen Franco
Federal Public Defender for the
Western District of Texas

Kathryn Wood Hutchinson
Chief, Capital Habeas Unit
Joshua Freiman
T. Nathaniel Lombardo
919 Congress Ave., Ste. 950
Austin, TX 78701
737-207-3010 (phone)
512-499-1584 (fax)
Joshua_Freiman@fd.org

## TABLE OF CONTENTS


Table of Contents ....................................................................................... i

Table of Authorities ..................................................................................... ii

Reply Brief ........................................................................................................ 1

I. The district court has subject-matter jurisdiction over Martin. ........................ 4

  A. Gonzales has standing to sue Martin. ................................................... 4

  B. Martin may be sued under *Ex parte Young*. ........................................... 8

    1. The district court's immunity findings should not be set aside. .............. 10

    2. Applying the guideposts for the *Young* analysis produces the same result. ...... 11

II. The Court should remand or reject Gerke's municipal liability argument. ........ 14

  A. The Court should remand the *Monell* issue. ......................................... 15

  B. If the Court reaches the issue, it should reject dismissal of Gerke under *Monell*. ...... 17

III. The Court should reverse the dismissal of Gonzales's as-applied due process claim. ...... 18

  A. The TCCA applied new hypothetical party instruction and resentencing rules that harmed Gonzales. ...... 19

    1. Bragg and Gerke cannot retract the District Attorney's position in the Chapter 64 litigation that the TCCA recognized new rules restricting access to testing. ...... 20

    2. Gerke's claim that Chapter 64 requires proof of innocence and insufficiency of the evidence to get testing is wrong, but underscores the due process violation here. ...... 23

  B. Bragg and Gerke make many other mistakes of law and fact. ............ 26

Conclusion ...................................................................................................... 28

Certificates of Service and Compliance with ECF Filing Standards ..........................

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Typle Style Requirements .................................................

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Evac EMS, Inc. v. Tex. Dep't Ins., Div. of Workers' Comp.*,
851 F.3d 507 (5th Cir. 2017) ....................9, 12, 13, 14

*Book People, Inc. v. Wong*,
91 F.4th 318 (5th Cir. 2024) ....................12, 13

*City of Austin v. Paxton*,
943 F.3d 993 (5th Cir. 2019) ....................9, 10

*Daves v. Dallas Cnty.*,
22 F.4th 522 (5th Cir. 2022) ....................16

*Edionwe v. Bailey*,
860 F.3d 287 (5th Cir. 2017) ....................17

*Gonzales v. State*,
No. AP-77,104, 2022 WL 663806
(Tex. Crim. App. Mar. 3, 2022)....................3, 7, 20, 26, 27

*Gutierrez v. Saenz*
606 U.S. 305 (2025)....................5, 7, 8

*Holberg v. State*,
425 S.W.3d 282 (Tex. Crim. App. 2014) ....................20, 22

*Johnson v. Griffin*,
69 F.4th 506 (8th Cir. 2023) ....................10

*Jones v. Bock*,
549 U.S. 199 (2007) ....................19

*Jones v. Dall. Cnty.*,
No. 21-10617, 2022 WL 3334493 (5th Cir. Aug. 12, 2022) ....................15

*La Union del Pueblo Entero v. Nelson*,
163 F.4th 239 (5th Cir. 2025) ....................4, 9

*K.P. v. LeBlanc*,
627 F.3d 115 (5th Cir. 2010) ........................................................................12, 14

*Ex parte Kussmaul*,
548 S.W.3d 606 (Tex. Crim. App. 2018) ..................................................25, 28

*Kutzner v. State*,
75 S.W.3d 427 (Tex. Crim. App. 2002) ....................................................24, 25

*McMillian v. Monroe Cnty*,
520 U.S. 781 (1997) ..........................................................................................16

*Mi Familia Vota v. Ogg*,
105 F.4th 313 (5th Cir. 2024) ..........................................................................13

*Monell v. New York City Department of Social Services*,
436 U.S. 658 (1978) ................................................................................. 2, 14-17

*Nat'l Press Photographers Ass'n v. McCraw*,
90 F.4th 770 (5th Cir. 2024) ............................................................................13

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ..........................................................................................22

*Norris v. Hearst Trust*,
500 F.3d 454 (5th Cir. 2007) ............................................................................18

*Pineda v. City of Houston*,
291 F.3d 325 (5th Cir. 2002). ...........................................................................18

*Reed v. Goertz*,
136 F.4th 535 (5th Cir. 2025) ..............................................................5, 8, 24, 25

*Reed v. Goertz*,
598 U.S. 230 (2023)..........................................................................5, 8, 9, 13, 14

*Reed v. State*,
541 S.W.3d 759 (Tex. Crim. App. 2017) ..........................................................20

*Routier v. State*,
273 S.W.3d 241 (Tex. Crim. App. 2008) ..................................................24, 28

*State v. Patrick*,
86 S.W.3d 592 (Tex. Crim. App. 2002) ............................................................7

*Smith v. State*,
165 S.W.3d 361 (Tex. Crim. App. 2005) ..........................................................24

*Southland Securities Corp. v. INSpire Ins. Solutions, Inc.*,
365 F.3d 353 (5th Cir. 2004). ..........................................................................8

*Texas Democratic Party v. Abbott*,
978 F.3d 168 (5th Cir. 2020) ..........................................................................11

*Texas v. Biden*,
10 F.4th 538 (5th Cir. 2021) ............................................................................8

*Ex parte Tuley*,
109 S.W.3d 388 (Tex. Crim. App. 2002) ..........................................................25

*United States v. Cluff*,
857 F.3d 292 (5th Cir. 2017) ..........................................................................22

*Winzer v. Kaufman County*,
916 F.3d 464 (5th Cir. 2019) .......................................................................... 15

*Ex parte Young*,
209 U.S. 123 (1908)..................................................................................*passim*

**Constitutional Provisions & Statutes**

28 U.S.C. § 1915A(a) ........................................................................................19

28 U.S.C. § 1915A(b) ........................................................................................19

42 U.S.C. § 1983 ...............................................................................................10

Fed. R. Civ. P. 12(b)(1) ......................................................................................19

Fed. R. Civ. P. 12(b)(6)..................................................................1, 2, 18, 19, 23

Fed. R. Civ. P. 12(c)...........................................................................................15

Fed. R. Evid. 201(b) ..........................................................................................18

Act of Apr. 5, 2001, ch. 2, 2001 Tex. Sess. Law Serv (S.B. 3). ...............................6

Tex. Code Crim. Proc. art. 38.35(b) ....................................................................7, 10

Tex. Code Crim. Proc. art. 38.43 ......................................................................10, 12

Tex. Code Crim. Proc. art. 38.43(b) ..........................................................................6

Tex. Code Crim. Proc. art. 38.43(c)(2)(A) ..................................................................6

Tex. Code Crim. Proc., Chapter 64.................................................................*passim*

Tex. Code Crim. Proc. art. 64.03(a)(1)(C)...................................................................19

Tex. Code. Crim. Proc. art. 64.03(a)(2)(A) ..........................................................3, 19, 20

Tex. Code Crim. Proc. art. 64.03(c)(1) .......................................................................11

Tex. Code Crim. Proc. art. 64.03(e)............................................................................11

Tex. Code Crim. Proc. art. 64.035 ..............................................................................11

**Other Authorities**

Brief for Respondents, *Gutierrez v. Saenz*, 145 S. Ct. 2258 (2025)
(No. 23-7809).............................................................................................4

Carrie Sperling & Kimberly Holst, *Do Muddy Waters Shift Burdens?* 76 Md. L. Rev. 629 (2017). ....................................................................................... 25

City of Odessa, *Crime Scene Unit, Odessa Police Department*, https://www.odessa-tx.gov/543/Crime-Scene-Unit...........................................17

City of Odessa, *Police Chief's Office, Odessa Police Department*, https://www.odessapd.com//1270/Police-Chiefs-Office ...................................17

House Criminal Jurisprudence Committee, Bill Analysis, Tex. H.B. 1011 78th Leg., R.S. (2003) .............................................................24

## REPLY BRIEF

This appeal raises a single issue: does Gonzales's complaint plausibly allege a violation of due process where Texas has denied him access to state-created rights to DNA testing and post-conviction relief based on unforeseeable and unfair procedural requirements?

Defendants-Appellees Bragg, Martin, and Gerke, in three separate briefs, advance alternate defenses and arguments under Fed. R. Civ. P. 12(b)(6) for affirming the district court's dismissal. As set forth below, each of these arguments is waived or lacks merit.

Travis Bragg, the assistant attorney general who is acting as the temporary Ector County district attorney, asserts new arguments that he failed to make in the district court, and that contradict his position before the Texas Court of Criminal Appeals that the court had applied new restrictions on testing under Chapter 64. Bragg Br. 7-30. *But see* ROA.1032-33. To the extent his arguments may be considered, they are too error-filled to be any aid to the Court: inaccurately describing the statutory requirements to obtain testing, the decision of the Court of Criminal Appeals, and the evidence at Gonzales's trial.

Freeman Martin, the director of the Texas Department of Public Safety, repeats entirety of Bragg's Rule 12(b)(6) argument, even though he failed to move to dismiss under Rule 12(b)(6) in the district court. Martin Br. 21 n.1. He also raises

meritless sovereign-immunity, *id.* at 10-18, and standing defenses, *id.* at 18-20, as alternate bases for dismissing the suit against him.

Michael Gerke, the chief of the Odessa Police Department, incorporates Bragg and Martin's Rule 12(b)(6) arguments, Gerke Br. 31 n.2, and adds other arguments that he too failed to make in the district court, *id.* at 31-41. *But see* ROA.1051-57. Finally, he argues that Gonzales has failed to adequately allege facts supporting municipal liability under *Monell*,[1] *id.* at 17-30, an issue that the district court did not reach, and that this Court should reject should it decide the issue in the first instance.

This reply first dispenses with Martin's subject-matter jurisdiction challenges, then addresses Gerke's *Monell* argument, which this Court should allow the district court to address first on remand, and finally turns to the Appellees' faulty analysis of the due process claim.

At bottom, the defendants fail to contend with the procedural arbitrariness created by the Texas Court of Criminal Appeals's authoritative construction of Chapter 64 in Gonzales's case.

This is best illustrated by Gonzales's inability to rely on prior exculpatory DNA testing to establish his need for further testing. *See* ROA.857-59. That testing,

---

[1] *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).

requested by the Odessa police and performed by the crime laboratory of the Texas Department of Public Safety, excluded Gonzales as a contributor to any item is the strongest basis for further DNA testing. ROA.858 ¶¶ 59-60. ROA.351. The testing excluded Gonzales as a possible contributor and linked the DNA of both victims to a bloody shirt collected from the closet of alternate suspect Jesse Perkins.

Yet under Chapter 64, that DNA evidence could not be—indeed, was not—considered when the TCCA evaluated whether Gonzales could meet the crucial "exculpatory results" provision of Chapter 64, Tex. Code Crim. Proc. art. 64.03(a)(2)(A), because it is a "post-trial factual development." *Gonzales v. State*, No. AP-77,104, 2022 WL 663806, at *10 n.10 (Tex. Crim. App. Mar. 3, 2022).

At the same time, the Texas Court of Criminal Appeals has retrospectively redefined "post-trial" to permit consideration of incriminating guilt-related resentencing testimony (by its nature, post-trial evidence) even though it was not presented to the original jury.

The Defendants cannot seriously defend the fairness of a procedure that affirmatively rejects consideration of compelling DNA evidence when deciding whether future DNA testing is appropriate, based on the happenstance of a evidentiary ruling made during a resentencing proceeding conducted fifteen years before the operative rule was announced.

Serious material questions about the defendant's guilt linger. Chapter 64 has been construed in novel and arbitrary ways that are uniquely harmful to Gonzales. The Court should reverse the district court's dismissal in the rare circumstances presented here and allow further proceedings on Gonzales's due process claim.

## I. The district court has subject-matter jurisdiction over Martin.

Martin raises two jurisdictional defenses: state sovereign immunity and lack of standing. In essence, Martin contends he is too remotely connected to the violation Gonzales alleges. So, according to Martin, (1) Gonzales's injury is not fairly traceable to his conduct, defeating standing, Martin Br. 20; and (2) Gonzales does not show the "scintilla"[2] of "connection with the enforcement of" Chapter 64 necessary to invoke the *Ex parte Young*[3] exception to sovereign immunity, Martin Br. 13. These jurisdictional arguments are meritless.

### A. Gonzales has standing to sue Martin.

First, as to standing, it is well-established that Gonzales has standing to sue Martin and the other defendants who act as custodians of evidence he seeks to test and who injure him by denying him access to that evidence save through a court order under Chapter 64.

---

[2] *La Union del Pueblo Entero v. Nelson*, 163 F.4th 239, 257 (5th Cir. 2025).
[3] 209 U.S. 123 (1908).

The Supreme Court has recently rejected the standing defenses of Texas officials in two similar cases brought by death-sentenced plaintiffs alleging unconstitutional denial of access to DNA testing of evidence under Chapter 64. *Gutierrez v. Saenz*, 606 U.S. 305, 314-20 (2025) (holding that plaintiff had standing to sue district attorney and police chief); *Reed v. Goertz*, 598 U.S. 230, 234 (2023) (*Reed I*)[4] (same, as to district attorney). *Reed* and *Gutierrez* govern, and Martin fails to distinguish his role from the other custodians of evidence who caused injuries in those cases.

**Injury in fact.** First, *Reed* and *Gutierrez* say that Gonzales has "sufficiently alleged an injury in fact: denial of access to the requested evidence." *Gutierrez*, 145 S. Ct. at 2266 (quoting *Reed*, 598 U.S. at 234). Martin concedes this point. *See* Martin Br. 19.

**Causation.** Second, Gonzales has alleged that Martin, Bragg, and Gerke deny access to the evidence in their custody, control, or possession, ROA.841 ¶¶ 1–2. In *Gutierrez*, the district attorney and the police chief held crime-scene evidence and would not provide it to the plaintiff for testing. As in *Reed*, these officials "thereby caused [Defendant's] injury,'" *Gutierrez*, 606 U.S. at 315 (quoting *Reed*, 598 U.S. at 234).

[4] The reply will refer to the Supreme Court's decision as *Reed I* and the decision of this Court on remand as *Reed II*. *See Reed v. Goertz*, 136 F.4th 535 (5th Cir. 2025).

Martin claims that Gonzales has not adequately alleged that DPS would refuse access to evidence, Martin Br. 19-20, but his argument is flawed for multiple reasons. First, and fatal to his argument, Martin admits that DPS would refuse access to the evidence it has unless Gonzales obtained a court order under Chapter 64: "DPS simply complies with the convicting court[']s order, if the evidence is in its possession." Martin Br. 18. He made the same point in the district court. ROA.1023 ("DPS could not independently grant the relief Gonzales requests if it wanted to. It is only a functionary that may, or may not, be court-ordered to carry out testing under Chapter 64.").

Martin's admission reflects the duties imposed on his office (as well as Bragg and Gerke's) under Texas law, which enforce Chapter 64's exclusive remedy. First, state law creates a custodial duty: DPS, Odessa police, and Ector County prosecutor are required to "retain[ ] and preserve[ ]" "biological evidence" until Gonzales's death. Tex. Code Crim. Proc. art. 38.43(c)(2)(A); *id.* art. 38.43(b) (applying provision to crime labs, law enforcement agencies, and prosecutor's offices).[5] "A law enforcement agency, prosecutor, or court"—but not a convicted person—"may request a forensic analysis by a crime laboratory of physical evidence if the evidence

[5] Chapter 64 must be read in tandem with this closely related provision, which the Texas Legislature enacted into law in the same statute, S.B. 3, that codified the right to DNA testing. Act of Apr. 5, 2001, ch. 2, 2001 Tex. Sess. Law Serv. (S.B. 3) (West) (establishing procedures for the preservation of evidence containing DNA and post-conviction DNA testing).

was obtained in connection with the requesting entity's investigation or disposition of a criminal action and the requesting entity: (1) controls the evidence; (2) submits the evidence to the laboratory; or (3) consents to the analysis." Tex. Code Crim. Proc. art. 38.35(b). Gonzales can only obtain court-ordered DNA testing of evidence through Chapter 64. *State v. Patrick*, 86 S.W.3d 592, 595 (Tex. Crim. App. 2002) (plurality op.) (Texas courts are "without jurisdiction" to enter orders for post-conviction DNA testing except under Chapter 64). Taken together, these laws place a duty on the custodians of biological evidence to refuse Gonzales the right to have evidence from his case tested for DNA absent a court order.

Martin also mistakes *Gutierrez* as "involv[ing]" only "the prosecutor and not a third party, like DPS." Martin Br. 20. Not so. *Gutierrez* applied its standing holding equally to the Brownsville, Texas police chief who was a custodian of evidence the plaintiff sought to test and a defendant-respondent before the Supreme Court. ROA.1134 (district court recognizing *Gutierrez* holding as to police chief). *See also* Brief of Respondents Saenz and Sauceda at 21 n.5, *Gutierrez*, 606 U.S. 305 (position of Texas Attorney General that redressability problems "apply equally to" Police Chief Felix Sauceda).

Martin further suggests that causation cannot be alleged through "group pleading." Martin Br. 19. Yet his only support comes from inapplicable law about corporate-officer liability for misstatements in private-securities causes of action,

*Southland Securities Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004).[6] Moreover, because the same legal duty to preserve evidence governs all three custodians of evidence, there is no reason to divide the analysis.

**Redressability.** Martin fails to discuss redressability. But one point bears emphasis. Gonzales seeks injunctive relief, not just a declaratory judgment as the plaintiffs had in *Reed* and *Gutierrez*.[7] So he is even surer to be able to redress his injury through the relief he seeks. *Texas v. Biden*, 10 F.4th 538, 548 (5th Cir. 2021) (finding an injunction ordering federal officials to reinstate immigration policy "would remedy [plaintiff] Texas's injury"). *See Gutierrez*, 606 U.S. at 315 ("'[I]f a federal court concludes that Texas's post-conviction DNA testing procedures violate due process, that court order would eliminate the state prosecutor's justification for denying DNA testing' and thereby remove the barrier between [Gonzales] and the requested DNA testing." (quoting *Reed*, 598 U.S. at 234)).

**B. Martin may be sued under *Ex parte Young*.**

Under *Ex parte Young*, a plaintiff may overcome sovereign immunity in suits for federal constitutional violations seeking prospective injunctive relief against

---

[6] "[T]he 'group pleading' doctrine in its broadest form allows unattributed corporate statements to be charged to one or more individual defendants based solely on their corporate titles." *Id.* at 363.

[7] The plaintiffs in *Reed* and *Gutierrez* did not pursue an injunction of any kind. *See Gutierrez*, 606 U.S. at 344 (Alito, J., dissenting) (noting Gutierrez's failure to cross-appeal denial of injunctive relief); *Reed II*, 136 F.4th at 544 (noting plaintiff "seeks a declaratory judgment").

state officers. 209 U.S. at 159-61. *Young* insists the state officer have "some connection with the enforcement of" the challenged law to avoid "merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Id*. at 157. "All that is needed," in other words, "is a scintilla of enforcement." *La Union del Pueblo Entero v. Nelson*, 163 F.4th 239, 257 (5th Cir. 2025) (internal quotation marks and citation omitted).

The district court carefully considered Martin's defense and soundly rejected it. ROA.1133-34. The Court must now review that determination de novo, while respecting the district court's resolution of disputed factual issues unless they are clearly erroneous.

Martin's sovereign immunity defense fails for reasons that "significantly overlap" with the standing analysis above. *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019) (quoting *Air Evac EMS, Inc. v. Tex. Dep't Ins., Div. of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017)). *See also Reed I*, 598 U.S. at 254 n.7 (Thomas, J., dissenting) (noting it is "fairly debatable" that "the 'connection' requirement described in *Young* . . . [is] a simple application of Article III traceability.").

In *Reed I*, the Supreme Court concluded that the local prosecutor fell within *Young*'s exception and was not immune from suit. 598 U.S. at 235. Although the Court did not elaborate on its reasoning, it necessarily rejected the prosecutor's

argument that he lacked sufficient connection to the enforcement of Chapter 64. *See id.* at 248, 254 & n.7 (Thomas, J., dissenting). And it is logical that the immunity holding flows directly from the Court's standing holding, which is based on the prosecutor's denial of access to evidence, 598 U.S. at 234. *See Paxton*, 943 F.3d at 1002. That holding weighs heavily against Martin's claim—as the only circuit to consider a crime lab director's immunity in a case like this has found. *See Johnson v. Griffin*, 69 F.4th 506, 513 (8th Cir. 2023) (holding state crime lab director sued in § 1983 challenge to Arkansas DNA testing law had "a sufficient connection" under *Young* "because [he] possess[es] and control[s] evidence that [the prisoner] seeks to test, and [has] refused to provide it to him.").

#### 1. The district court's immunity findings should not be set aside.

The district court found "[Martin] has custody of evidence that Gonzales seeks to have tested under the DNA statute." ROA.1134. The district court recognized that, as a custodian of evidence that may contain biological material, Martin had "a statutory duty to retain and preserve any biological evidence submitted." ROA.1133. As described above, these duties meant Martin was required to refuse Gonzales access to that evidence in his custody for DNA testing, absent a court order (which Gonzales could only get under Chapter 64). *See* Tex. Code Crim. Proc. art. 38.43; *id.* Tex. Code Crim. Proc. art. 38.35(b).

The district court found that, "[i]n addition to" his duties as a custodian of evidence, Chapter 64 imposed specific duties on DPS to carry out the Chapter 64 remedy:

> [DPS] may be required under Chapter 64 to either conduct DNA testing or, if testing is done by a different laboratory, to receive the results prepared by the outside laboratory within thirty days. [DPS] may also be required to compare any unidentified DNA profile with profiles in the DNA database that he maintains.

ROA.1133-1134 (citing Tex. Code. Crim. Proc. art. 64.03(c)(1), (e), art. 64.035(2)). DPS thus plays a significant role in Chapter 64's scheme, which, the district court found, Martin had "drastically understate[d]." ROA.1133.

What is more, the court noted that DPS conducted the only DNA testing in Gonzales's case on the request of the Odessa Police Department. ROA.1134 n.4.[8]

Placing the district court's reasoning within the "guideposts" this Court uses, it is equally evident that Martin cannot avoid suit.

### 2. Applying the guideposts for the *Young* analysis produces the same result.

**a. Particular duty.** The first guidepost is whether the state officer has a particular duty to enforce—that is, more than a general duty to follow the law. *Texas Democratic Party v. Abbott*, 978 F.3d 168, 181 (5th Cir. 2020). Martin's

[8] A Texas Ranger, that is a DPS employee, also was detailed to the Odessa Homicide Task Force and participated in the investigation of the case. *See* ROA.846, 851, 852.

"custodianship" of evidence, *see* Tex. Code Crim. Proc. art. 38.43, and "role" in carrying out the Chapter 64 remedy are particular statutory duties that enforce Chapter 64's procedural restrictions. ROA.1134.

Martin complains that these duties are insufficiently connected because he does not directly enforce the provisions of Chapter 64 that determine whether testing may be granted. But that misunderstands the inquiry.

As with traceability for standing, enforcement here involves denying access to evidence for DNA testing in a state official's custody unless the prisoner obtains a court order through the unconstitutional Chapter 64 procedure. *See Reed*, 598 U.S. at 234 (denial of access to evidence is the relevant injury). The form of enforcement does not need to look like the "direct enforcement" at issue in *Young*, "threatened civil and criminal prosecution." *Book People, Inc. v. Wong*, 91 F.4th 318, 335 (5th Cir. 2024) (quoting *Air Evac*, 851 F.3d at 519); *see also K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010). It is enough that a state official give effect to a challenged statute and so "ensures [the challenged statutory] scheme is enforced from start to finish." *Air Evac*, 851 F.3d at 519 (state worker's compensation and insurance commissioners had sufficient connection to allegedly federally-preempted state worker's compensation law by applying reimbursement regulations in rate-setting and arbitration of fee disputes); *Book People*, 91 F.4th at 335 (state education

commissioner who did not promulgate new schoolbook content rules would enforce them against vendors).

Nor does the duty have to fall exclusively to one officer. *See, e.g.*, *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 786 (5th Cir. 2024) (finding state agency heads, including DPS Director, had a particular duty to enforce because "[a]s heads of Texas law-enforcement agencies, [defendants] have more than just the general duty to see that the state's laws are implemented—they are *directly* responsible for enforcing Texas's criminal laws").

Martin's theory of specific, direct enforcement of Chapter 64's procedural provisions would require overturning *Reed I*. The prosecutor has fewer duties related to the enforcement of Chapter 64 than the DPS director. A prosecutor's only official duty is to retrieve evidence that the movant seeks to have tested and deliver it to the court, or say why he cannot. Tex. Code Crim. Proc. art. 64.02(a)(2). The prosecutor does not directly enforce the provisions of Chapter 64 remedy any more than Martin does. At most, the prosecutor could only consent to testing "*outside* the ambit of Chapter 64." Martin Br. 16.

**b. Demonstrated willingness to enforce.** The next guidepost is "demonstrated willingness to enforce" the statute. *Mi Familia Vota*, 105 F.4th at 329. Gonzales does not need to point to a historical instance of enforcement or threatened enforcement. *See Air Evac*, 851 F.3d at 519. Martin's own representation

that "DPS could not independently grant the relief Gonzales requests if it wanted to," ROA.1023, demonstrates his willingness to enforce Chapter 64 in precisely the manner that the Supreme Court has deemed relevant: by denying him access to the evidence absent a court order under Chapter 64. *See Reed*, 598 U.S. at 234.

**c. Signs of compulsion or constraint.** Finally, courts look for signs of "compulsion or constraint"—hallmarks of enforcement—in the officer's duties and actions. *K.P.*, 627 F.3d at 124. Martin's duty of preservation and duties to act under Chapter 64 involve correlative duties to deny access to evidence and refuse actions absent court authorization. These duties to exclude compel Gonzales to use the unconstitutional Chapter 64 scheme and constrain his ability to obtain testing and pursue post-conviction claims for relief. Like the plaintiffs in *Air Evac*, the indirect enforcement ensures the challenged law is given effect from start to finish. 851 F.3d at 519.

The Court should reject Martin's immunity defense.

## II. The Court should remand or reject Gerke's municipal liability argument.

Gerke argues that this Court should affirm the dismissal as to him under *Monell*, 436 U.S. 658.

The court did not reach the *Monell* issue. The Court should remand this issue for further proceedings and initial consideration by the district court, or else reject it now based on public records disproving Gerke's argument.

### A. The Court should remand the *Monell* issue.

Several factors militate in favor of remand.

Gerke has muddled and delayed presentation of the *Monell* issue. He failed to raise *Monell* in his motion to dismiss the original complaint, ROA.825–830; his answer to the original complaint, ROA.797–824; his motion to dismiss the amended complaint, ROA.939-44, or his answer to the amended complaint, ROA.909-38. He finally raised *Monell* in his procedurally improper second, post-answer "motion to dismiss," which at best could be characterized as a premature motion for judgment on the pleadings under Rule 12(c). ROA.1041-59.

Once Gerke raised the issue, Gonzales proposed to amend his complaint with specific allegations that he believes will dispel any doubt as to *Monell.* ROA.1098-1100. The district court did not reach the question of Gonzales' proposed amendment or the *Monell* issue. ROA.1148.

If the Court reverses the dismissal of Gonzales's claim, the district court should have the opportunity to address the issue in the first instance, and Gonzales should have the opportunity to seek leave to amend his complaint. *See Winzer v. Kaufman County*, 916 F.3d 464, 477 (5th Cir. 2019) (reversing summary judgment against defendant county and remanding for further consideration of the unaddressed issue of *Monell* liability); *Jones v. Dall. Cnty.*, No. 21-10617, 2022 WL 3334493, at *3 n.3 (5th Cir. Aug. 12, 2022) (remanding *Monell* issue and noting "that if

[plaintiff's] allegations are deficient in this regard, [he] should be granted leave to amend his complaint because the district court's first dismissal did not put him on notice that his claim might have failed on *Monell* grounds").

Finally, Gonzales notes that Gerke's *Monell* argument implicates an unsettled threshold question: whether the chief is functioning as a municipal official or state official in this particular context. Because Gerke has ignored controlling law and inadequately briefed that issue, this Court should remand and "leave the issue for later." *Daves v. Dallas Cnty.*, 22 F.4th 522, 541 (5th Cir. 2022) (en banc).

For *Monell* to apply, the Court must "determine[ ] whether an official with final policymaking authority *as to the specific function involved in the litigation* is acting for a local governmental unit or the state." *Id.* at 533 (emphasis added) (citing *McMillian v. Monroe Cnty*, 520 U.S. 781, 786 (1997)). Gerke mistakenly assumes that, because his office is created and funded by the City of Odessa, the claims against him must be *against* the city. Gerke Br. 20-21. This Court has never decided whether a Texas municipal police chief functions as a state or municipal actor when acting pursuant to statutory evidence-preservation duties imposed by the Texas Code of Criminal Procedure. Gonzales reserves the right to supplement and modify his

analysis on remand, though there is some reason to think that evidence preservation is a state, not local, function.[9]

### B. If the Court reaches the issue, it should reject dismissal of Gerke under *Monell*.

In his opposition to Gerke's motion to dismiss, Gonzales proposed factual allegations that Gerke's policy or custom as Chief of the Odessa Police Department was the "moving force" of the constitutional violation. ROA.1098-1100. Gonzales declared that he would seek leave to amend to address the *Monell* liability question if a defect was identified, and proposed specific allegations for the amendment that would cure any deficiency. ROA.1100. *See Edionwe v. Bailey*, 860 F.3d 187, 194 (5th Cir. 2017) (holding leave to amend may be appropriate where movant apprises court of facts movant would plead in amended complaint to cure any deficiencies).

In relevant part, Gonzales points to the City of Odessa's official website to establish the police chief's role as policymaker and the policy he has issued for the preservation of evidence. *See* ROA.1098-1099; City of Odessa, *Odessa Police Department Police Chief's Office*, https://www.odessa-tx.gov/1270/Police-Chiefs-Office (describing policymaking responsibility); City of Odessa, *Crime Scene Unit, Odessa Police Department*, https://www.odessa-tx.gov/543/Crime-Scene-Unit

[9] For example, Gerke seems to concede that his department's evidence policy is a state function: "[t]he City holds the evidence for the State [and] it is the State that controls it and decides what to do with it, not the City." Gerke Br. 25.

("Property & Evidence Technicians" tab) (The Crime Scene Unit "preserve [crime-scene] evidence until requested for analysis, courtroom proceedings or until the statute of limitations expires" and "[f]ollow[] procedures set forth in the Texas Criminal Code of Procedure" for the release and destruction of evidence.).

This Court could take judicial notice of the information from these reliable public records and reject Gerke's defense. *Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."); Fed. R. Evid. 201(b). According to these records, Gerke is a policymaker delegated responsibility by the City of Odessa to make policies for the department and does have a policy of evidence preservation that is the moving force behind Gonzales's injury. *See Pineda v. City of Houston,* 291 F.3d 325, 328 (5th Cir. 2002).

## III. The Court should reverse the dismissal of Gonzales's as-applied due process claim.

The Defendants present numerous arguments across three interlocking briefs. Martin copies Bragg. Gerke incorporates Bragg's by reference, and adds more.

Before turning to the arguments, the Court should address waiver. Many of Bragg and Gerke's arguments have been forfeited by their failure to raise them in the district court. Martin is even worse off: he never moved to dismiss under Rule 12(b)(6), so he forfeited everything he now attempts to argue. Martin Br. 21 n.1.

Martin also should not be entitled to dismissal on any Rule 12(b)(6) ground. Martin moved to dismiss under Rule 12(b)(1), not 12(b)(6). Invoking its authority to "screen" and dismiss inmate lawsuits brought in forma pauperis, 28 U.S.C. § 1915A(b)(1), the district court *sua sponte* dismissed for failure to state a claim as to Martin. ROA.1137. That was a clear abuse of the early judicial screening power, which only allows courts to *sua sponte* dismiss "before docketing, if feasible, or, . . . as soon as practicable after docketing." § 1915A(a). The Supreme Court has said that the "screening requirement does not . . . justify deviating from the usual procedural practice beyond the departures specified by the [statute] itself." *Jones v. Bock*, 549 U.S. 199, 214 (2007) (rejecting argument for pleading exhaustion in inmate lawsuits). It was not intended to bail out a state defendant who was represented by experienced counsel, filed a motion to dismiss, and slept on his rights.

### A. The TCCA applied new hypothetical party instruction and resentencing rules that harmed Gonzales.

To secure testing, Gonzales must show, in relevant part, that "identity was or is at issue," Tex. Code Crim. Proc. art. 64.03(a)(1)(C), and "by a preponderance of the evidence" that he "would not have been convicted if exculpatory results had been obtained through DNA testing" *id.* art. 64.03(a)(2)(A).

There are two unmistakable new rules the TCCA applied in denying Gonzales testing.

1. The TCCA extended a rule for accomplice liability to a case in which the State had put on no evidence of accomplice liability and told the jury that Gonzales could only be found guilty for murdering both victims. The TCCA said,

> In cases involving accomplices, a defendant can only meet his burden under Article 64.03(a)(2)(A) if he can show that testing, if exculpatory, will establish that he did not commit the crime as either a principal or a party.

*Gonzales*, No. AP-77,104, 2022 WL 663806, at *10.

2. The Court for the first time held that it could consider testimony heard at a resentencing proceeding in evaluating whether Gonzales satisfied the exculpatory-results requirement, Art. 64.03(a)(2)(A):

> In making an Article 64.03(a)(2)(A) determination on whether a movant for DNA testing would not have been convicted, we have said that we 'do not consider post-trial factual developments.' *Reed* [*v. State*, 541 S.W.3d 759, 774 (Tex. Crim. App. 2017]. 'Instead, we limit our review to whether exculpatory results "would alter the landscape if added to the mix of evidence that was available at the time of trial."' *Id.* (quoting *Holberg v. State*, 425 S.W.3d 282, 287 (Tex. Crim. App. 2014)). A punishment retrial is a part of Appellant's trial.

*Id.* at *10 n.10.

**1. Bragg and Gerke cannot retract the District Attorney's position in the Chapter 64 litigation that the TCCA recognized new rules restricting access to testing.**

In state court, the district attorney—the "attorney for the State"— opposed Gonzales's request for testing under Chapter 64. After the TCCA affirmed the denial of testing, the State urged the court to publish its decision because it recognized the new rules restricting access to testing. ROA.894 ¶ 160, ROA.900 ¶ 176 (resentencing

rule is “a new rule of law or a modification of the rule announced in” prior TCCA decisions), ¶ 177 (“The State has located no other published opinion where [the TCCA] relied on the ‘party or principal’ language . . . but where a parties charge was not submitted to the jury.”).

These are the linchpins of Gonzales’s due-process claim. It was fundamentally unfair to apply a party liability framework to a case where the State brought no evidence of others’ involvement, just supposition, and no jury charge that would direct the court to consider Gonzales’s party liability—that is, his guilt for any killing committed by others. And, given the history of Gonzales’s case, it was unfair to allow the State to rely on evidence the jury deciding guilt never heard, that was presented during a sentencing proceeding in which Gonzales was specifically barred from presenting residual doubt evidence attacking the reliability of the conviction.

Yet the district attorney and the other defendants now ignore the State’s original position in the Chapter 64 litigation, and claim that there is nothing novel or unforeseeable in the application of these rules, Bragg Br. 17-20; 23-26; Gerke Br. 37-38.

Bragg and Gerke go further, saying that Gonzales misunderstands the TCCA opinion, which does not even contain the rules or holdings that he alleged and that the attorney for the State himself had identified in seeking to *publish* the decision. Bragg Br. 10-15; 25-26; Gerke Br. 35, 40. ROA.894, ROA.900.

The Court should find that the attorney for the State accurately described the newly recognized rules of decision in their motion to the TCCA, not when his successor Bragg is backtracking in federal court.[10]

Bragg accuses Gonzales of misunderstanding and "conjuring" rules (at 10), but himself remixes TCCA law to exaggerate continuity with past cases and mute the novel aspects of the decision. Every "rule" becomes an "application" for Bragg. In one tortuous and obfuscating sentence, however, Bragg does concede the TCCA applied a new rule: "While the TCCA did reiterate the [accomplice] rule [here]. . . the Court did not strictly apply this rule. . . but rather, it stated the rule to illustrate that where the evidence suggests that third parties may have been involved, the involvement of those third parties must be considered in determining whether presumed exculpatory evidence would exonerate the Chapter 64 petitioner." Bragg Br. 16. To recap: the TCCA did not "strictly apply" the rule, but it did "state" that the rule "must be considered" in this case where there is "evidence suggest[ing] that third parties may have been involved."

---

[10] The equitable doctrine of judicial estoppel "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." *United States v. Cluff*, 857 F.3d 292, 301 (5th Cir. 2017) (citation modified). Had the State prevailed on its motion to publish, Bragg and possibly the other defendants could be "judicially estopped" from attempting their about-face. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

Bragg applies the same credulous approach to the atextual resentencing rule. The district attorney previously stated, "This is a new rule of law or a modification of the rule announced in *Holberg* and *Reed*." ROA.894 ¶ 166. But now, Bragg concludes, "this is not a new rule, but the application of the TCCA's own precedent." Bragg Br. 25.

**2. Gerke's claim that Chapter 64 requires proof of innocence and insufficiency of the evidence to get testing is wrong, but underscores the due process violation here.**

Gerke supplements Bragg's arguments with a different approach to rationalizing Chapter 64's arbitrary rule permitting a hypothetical party instruction and explaining away its novelty. In Gerke's telling, the TCCA applied a "hypothetically correct jury instruction" regarding party liability, because the court was actually conducting (and has always conducted) a sufficiency of the evidence review, which he believes is coextensive with proving one's innocence. Gerke Br. 35-38.

Gerke's reconstruction of Chapter 64 is (unintentionally) provocative because it claims the statute does exactly what it has long disclaimed: demand an impossible level of proof that would erect an insuperable barrier to accessing the remedy. If Gerke is right, the statute surely fails the due process test and Gonzales at least can overcome Rule 12(b)(6).

But even though Gerke is incorrect as a matter of doctrine, he uncovers elements of the TCCA's analysis that are vestiges of the proof-of-innocence and sufficiency approaches and so further support Gonzales's due process claim.

In claiming that Gonzales had to "prove" his innocence to obtain DNA testing, Gerke is just wrong. Gerke Br. 38-39. Gerke derives his innocence argument in part from this Court's (erroneous) citation in *Reed II* to a long-since abrogated 2002 TCCA decision: "the exoneration requirement exists to ensure that the 'DNA tests will prove a convicted person's innocence' and not 'merely muddy the waters.'" *Reed II*, 136 F.4th at 547 (quoting *Kutzner v. State*, 75 S.W.3d 427, 438, n.27 (Tex. Crim. App. 2002)). But that is no longer the law. "In response to [*Kutzner*], the Legislature amended and clarified Article 64.03." *Smith v. State*, 165 S.W.3d 361, 363–64 (Tex. Crim. App. 2005). The Legislature disclaimed ever "intend[ing] for the defendant to have to prove 'actual innocence' (a principle under habeas law) in order to meet his burden to have the test done." *Id.* (quoting House Criminal Jurisprudence Committee, Bill Analysis, Tex. H.B. 1011 78th Leg., R.S. (2003)). Under the current exoneration requirement, "The defendant must prove that, had the results of the DNA test been available at trial, there is a 51% chance that the defendant would not have been convicted." *Id. See, e.g.*, *Routier v. State*, 273 S.W.3d 241, 259 n.76 (Tex. Crim. App. 2008) ("[E]ven if the DNA testing to which the appellant is entitled under the statute does in fact provide evidence to corroborate

her story of an unknown intruder, she may not be entitled to relief by way of habeas corpus because she may well fall short of meeting the onerous standard for proving actual innocence.”).

Still, Gerke is right to highlight the TCCA’s continuing use of the “muddy the waters” metaphor from *Kutzner*, including in Gonzales’s Chapter 64 litigation, 2022 WL 663806, at *10, which suggests continuing application of the repudiated burden of proving innocence. As a 2017 study found, after *Kutzner* was abrogated, “the muddy waters metaphor stubbornly persisted, finding its way into forty-five decisions applying the statute even after the 2003 legislative fix.” Carrie Sperling & Kimberly Holst, *Do Muddy Waters Shift Burdens?* 76 Md. L. Rev. 629, 654 (2017).

The proposed use of sufficiency is also contrary to Texas law. Gerke claims Chapter 64 “invites” a sufficiency-style review, but does not cite to a single case saying so. Gerke Br. 37. Gerke also wrongly conflates sufficiency and innocence standards, Gerke Br. 38, even though a claim of actual innocence is not the same as “claiming that the evidence at trial was insufficient to support the conviction.” *Ex parte Kussmaul*, 548 S.W.3d 606, 636 (Tex. Crim. App. 2018) (citing *Ex parte Tuley*, 109 S.W.3d 388, 392 (Tex. Crim. App. 2002)).

Despite his many legal errors, Gerke is correct that the TCCA applied a sufficiency-like analysis, 2022 WL 663806, at *8 (finding identity not at issue

because "evidence was clearly sufficient to show that Appellant played a primary role in the offense"), at *10 (requiring Gonzales to negate alternative grounds for liability). Gerke Br. 35-37.

### B. Bragg and Gerke make many other mistakes of law and fact.

Without cataloging every error in Bragg and Gerke's briefs, Gonzales notes some of the most salient.

Bragg has no factual support for his view that, at trial, the state presented enough evidence to permit a law of parties instruction to be submitted to the jury. Bragg says that it was a "reality" that "other persons" were "at the scene of the crime" and on that "reality" the TCCA reasonably denied testing. *See* Bragg Br. 10. In fact, the trial record—not "reality"—contained only non-evidentiary suggestions of involvement from arguments of the prosecutor and the defense attorney, and (inadmissible) opinion testimony from the lead detective and a witness (and overlooked suspect) who had stolen property in his possession. *See* Gonzales Br. 19-20. Only in the resentencing proceeding did anything like evidence emerge through the lead detective's hearsay testimony that Jesse Perkins had admitted he was in the house, though perhaps after the murder. 27 RR-R 192, 194-95. Thus, contrary to Bragg's assertion, there was not "*evidence* suggest[ing] that third parties may have been involved," Bragg Br. 15, and the TCCA's imposition of a party liability rule in Gonzales's case seems all the more anomalous.

Gerke similarly doubts that the jury was really required to find Gonzales guilty of murdering both victims acting alone. Gerke Br. 35-36. The TCCA's answer is unequivocally yes. Since no parties charge was given, the jury had to find Gonzales killed both victims himself. *See Gonzales*, 2022 WL 663806, at *4.

Bragg and Gerke also misunderstand Gonzales's claim for relief. Gonzales does not argue that the Constitution was violated because he was entitled to present residual doubt evidence. *Contra* Bragg Br. 29-30. Gonzales argues instead that due process is violated in part by the "uniquely unfair" combination of circumstances: the denial of his motion to present residual doubt evidence including exculpatory DNA test results, the TCCA's retroactive determination that resentencing evidence may be considered under Chapter 64, and the refusal to consider Gonzales's proffered residual-doubt evidence. *See* Gonzales Br. 39 (citing ROA.900).

Bragg and Gerke also overlook Gonzales's allegations that the denial of access to evidence for testing bars his access to post-conviction remedies for new scientific evidence and actual innocence. *See* ROA. 903 ¶¶ 186-89. Gonzales suffers a double-injury then from the unconstitutional denial of access to testing. Even if Gonzales's chances of proving his innocence are illusory, he has a far greater prospect of success in showing, by a mere preponderance, that if exculpatory DNA evidence unavailable at the time of his trial had been presented, the jury would have

had a reasonable doubt as to his guilt for killing the two victims by himself. *See Kussmaul,* 548 S.W.3d at 641; *Routier*, 273 S.W.3d at 259 n.76.

**CONCLUSION**

For the foregoing reasons, the Court should reverse and remand for further proceedings on Gonzales's first claim for relief.

Respectfully submitted,

Maureen Franco
Federal Public Defender for the
Western District of Texas

Kathryn Wood Hutchinson
Chief, Capital Habeas Unit

/s/ Joshua Freiman
Joshua Freiman
Thomas Nathaniel Lombardo
Assistant Federal Public Defenders
919 Congress Ave., Ste. 950
Austin, TX 78701
737-207-3010 (phone)
512-499-1584 (fax)
Joshua_Freiman@fd.org

Richard Burr
Burr and Welch, PC
PO Box 525
Leggett, TX 77350
713-628-3391
dick@burrandwelch.com

*Counsel for Appellant Michael Dean Gonzales*

**CERTIFICATES OF SERVICE AND COMPLIANCE WITH ECF FILING STANDARDS**

I do hereby certify that on August 14, 2026, the foregoing document was served, via the Court's CM/ECF Document Filing System, upon all registered users and counsel of record for Appellees.

Counsel further certifies that (1) required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses.

/s/ Joshua Freiman
Joshua Freiman
Counsel for Appellant

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPLE STYLE REQUIREMENTS

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,419 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

/s/ Joshua Freiman
Joshua Freiman
Counsel for Appellant

DATED: August 14, 2026